IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRIAN A. CHADWICK, )
)
    Plaintiff, )
)
vs. ) Case No. 14-cv-214-TLW
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )
Administration, )
)
    Defendant. )

## OPINION AND ORDER

Plaintiff Brian A. Chadwick seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 5). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168,

1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**BACKGROUND**

Plaintiff, then a 31 year old male, completed his applications for Titles II and XVI benefits on March 12, 2007. (R. 173-77, 178-81). Plaintiff alleged a disability onset date of September 1, 2005. (R. 173, 178). Plaintiff claimed that he was unable to work due to problems with Meniere's disease. (R. 207). Plaintiff's claims for benefits were denied initially on April 17, 2007, and on reconsideration on March 27, 2008. (R. 95-103; 105-10). Plaintiff then requested and received a hearing before an administrative law judge ("ALJ") (R. 35-56), after which, his claim was again denied on June 18, 2009.[1] Plaintiff filed a request for review of that decision with the Appeals Council, and on June 23, 2010, the Appeals Council remanded the June 18, 2009 decision for another hearing with specific instructions to the ALJ.

The ALJ held a second hearing on August 5, 2011. (R. 57-83). The ALJ found that plaintiff was unable to perform any of his past relevant work as a furniture mover, pool maintenance worker, construction worker, painter, "counter sales," pest control worker, or computer draftsman, but did find that other jobs existed in significant numbers that plaintiff could perform, such as food order clerk, assembly worker, and checker. (R. 27-28). Therefore, in a second decision on October 26, 2011, the ALJ again denied benefits and found plaintiff not disabled. (R. 17-29). The Appeals Council denied review, and plaintiff appealed. (R. 1-4; dkt. 2).

---

[1] The current ALJ decision references the first ALJ decision, but it is not included in the record. The June 23, 2010 Order of the Appeals Council is also not included in the record, but is recorded in the current ALJ decision.

**The ALJ's Second Decision[2]**

As an initial matter, the ALJ noted that plaintiff's case was before him on remand from the Appeals Council, and that the Appeals Council had specifically directed him to:

> Evaluate the claimant's obesity in accordance with Social Security Regulation 02-1 p.
>
> Obtain additional evidence concerning the claimant's Meniere's disease and his complaints of associated mental symptomatology in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).
>
> If necessary, obtain evidence from a medical expert in order to clarify the nature and severity of the claimant's mental impairment (20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6P[)].
>
> If necessary, evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a.
>
> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue.

(R. 20).

The ALJ found that plaintiff's last insured date was December 12, 2010. (R. 23). The ALJ found that plaintiff had not performed substantial gainful activity since his alleged onset date of September 1, 2005. Id. At step two, the ALJ found that plaintiff had the severe impairments of Meniere's disease and obesity. Id. He stated that "[e]ach of the above impairments are established by the medical evidence and are 'severe' within the meaning of the Regulations because they cause more than minimal functional limitations in the claimant's ability to perform basic work activities." Id. The ALJ then stated that "[t]he summary of the objective medical evidence set out in the prior Administrative Law Judge decision is adopted in

---

[2] As noted *supra*, the first ALJ decision is not contained in the record, and therefore not available to summarize. However, the Court notes that ALJ McClain conducted both hearings, and was undoubtedly familiar with his prior decision. See (R. 35-56; 57-83).

3

this decision as if set out in full in this decision; however, the findings, conclusions, and decision are not adopted.[3]" Id. See n.2.

At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment, stating that he "gave particular consideration to [plaintiff's] physical and mental impairments (see Sections 2.00, et seq., Special Senses and Speech, 12.00, et seq., Mental Disorders)." Id. After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally lift/carry 10 pounds, frequently lift/carry up to 10 pounds; stand/walk at least two hours out of an eight-hour workday; and sit at least six hours out of an eight-hour workday, all with normal breaks. He should avoid such things as unprotected heights, dangerous machinery, and not work around loud noises. He should be allowed to remain seated due to problems with balance. Mentally, the claimant would need simple and repetitive tasks and no more than incidental contact with the public.

Id.

The ALJ gave Thomas Dodson, M.D.'s 2005 diagnosis of Meniere's disease "considerable weight." (R. 27). He also gave considerable weight to Donald Dushay, D.O.'s 2008 relatively normal consultative examination (except for hearing loss in plaintiff's right ear). Id. The ALJ gave Dr. Sammy Worrall's 2008 treatment notes and negative CT scan "substantial weight." Id. The ALJ gave substantial weight to Sri Reddy, M.D.'s 2010 consultative examination, which "indicated mainly a normal examination, except for decreased hearing in the right ear and decreased strength in his hands." In his report, Dr. Reddy opined that plaintiff "was able to use his hands for everything except to push/pull." Id. The ALJ also gave Larry Vaught, Ph.D.'s mental 2010 consultative examination "substantial weight." Dr. Vaught opined that

---

[3] The Court notes that step two is normally where all of the ALJ's severity findings are contained, both severe and nonsevere. In this case, the ALJ made no findings at all regarding plaintiff's mental impairments using the "special technique" paragraph B guidelines set out in 20 C.F.R. §§ 404.1520a and 416.920a.

plaintiff possessed "above average intelligence and his only limitations were concerning complex tasks and dealing with people."[4] Id. The ALJ also discounted plaintiff's treating physician, Stanley Lang, Ph.D., who submitted two medical source statements, only one of which the ALJ mentioned when discussing weight. Id.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work as a furniture mover, pool maintenance worker, construction worker, painter, "counter sales," pest control worker, or computer draftsman, because each exceeded his residual functional capacity. (R. 27-28). At step five, the ALJ found that plaintiff could perform the sedentary jobs of food order clerk (DOT # 209.567-014), assembly worker (DOT # 726.684-110), and checker (DOT # 716.687-030). (R. 28). Because he found that other work existed that plaintiff could perform, the ALJ determined that plaintiff was not disabled. Id.

**Medical Records[5]**

Plaintiff presented to Dr. Reddy on December 2, 2010 for a consultative physical examination following the Appeals Council's June 23, 2010 reversal of the ALJ's June 18, 2009 unfavorable decision. (R. 340-351). Dr. Reddy performed a physical examination and completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form for the Social Security Administration. Id.

After taking a brief history of plaintiff's chief complaint of Meniere's disease, Dr. Reddy noted plaintiff's height was 5'8" and that he weighed 215 pounds. (R. 340-41). His grip strength

---

[4] Dr. Vaught's opinion is a "checklist" form and the "limitations concerning dealing with people" mentioned by the ALJ are actually moderate limitations in plaintiff's ability to interact appropriately with the public, co-workers, and supervisors. (R. 353). The ALJ did mention this in his RFC discussion (see R. 27), but failed to include any RFC limitation for plaintiff's moderate limitation in dealing with co-workers and supervisors. See (R. 23).

[5] The Court will focus discussion on the consultative examinations of Sri K. Reddy, M.D., and Larry Vaught, Ph.D., which both occurred after the Appeals Council remanded the June 18, 2009 ALJ decision for further evaluation.

was "20kg on the right [and] 20kg on the left." (R. 341). Dr. Reddy observed decreased hearing in plaintiff's right ear. Id. Plaintiff's basic neurological testing, including seated straight leg raise testing, was normal. Id. Dr. Reddy's impression was "Meniere's disease since 2005 with multiple symptoms noted above." Id.

When completing his Medical Source Statement, Dr. Reddy opined that plaintiff could lift and/or carry up to 10 pounds occasionally (up to 1/3 of the day), 11 to 20 pounds occasionally, and never lift and/or carry 21 to 50 pounds or 51 to 100 pounds, all due to "Meniere's disease." (R. 342). He said that plaintiff could sit eight hours without interruption, stand four hours without interruption, and walk two hours without interruption. (R. 343). Plaintiff could sit six hours total in an eight hour workday, stand one hour total in an eight hour workday, and walk one hour total in an eight hour workday. Id. Dr. Reddy opined that plaintiff could continuously use both of his hands to reach in all directions, including overhead, handle, finger, and feel, but could only occasionally use them to push and/or pull. (R. 344). Plaintiff could continuously use both of his feet for foot controls. Id. Dr. Reddy stated that plaintiff should never crouch, crawl, balance, or climb ladders, stairs, ramps, or scaffolds. (R. 345).

Plaintiff presented to Larry Vaught, Ph.D. on December 14, 2010 for a mental consultative examination. (R. 352-362). Dr. Vaught conducted a range of psychological tests and completed a Medical Source Statement of Ability to do Work Related Activities (Mental) form. Id.

Dr. Vaught discussed plaintiff's physical history with him, and how plaintiff felt his physical problems with Meniere's disease decreased his self-worth and increased his depression. (R. 356). Plaintiff reported an increase in both his depression and anxiety since his children were placed in foster care after his ex-wife's legal problems. Id.

6

Dr. Vaught summarized plaintiff's examination and test results as follows. (R. 360). Plaintiff denied any history of mental health treatment. Id. His level of functioning in the area of activities of daily living "depends on the severity of his Meniere's Disease." Id. In the area of concentration, persistence and pace, plaintiff obtained a "Processing Speed index" score of 91; he received "Working Memory indices of 92 and 85 on the WAIS-III and WMS-III, respectively;" he received an "Auditory Immediate index of 89 and an Auditory Delayed index of 102" on the WMS-III; he received a WAIS-III full-scale IQ score of 113; and he received an "Halstead Impairment Index of .14."[6] Id. Dr. Vaught used this information to diagnose plaintiff with the mental impairments of "Adjustment Disorder with Mixed Anxiety and Depressed Mood, Chronic," and a mathematics disorder. Id.

Dr. Vaught completed a Medical Source Statement using the information from his examination and found that plaintiff was moderately limited in his ability to understand, remember, and carry out complex instructions (R. 352); and moderately limited in his ability to interact appropriately with co-workers, supervisors, and the general public. (R. 353). All other areas were rated with mild limitation. (R. 352-353). Dr. Vaught supported his opinion with the results of his testing showing depression, anxiety, introversion, hypervigilance, "and possible paranoid features." (R. 353).

**ALJ Hearing Testimony[7]**

After the ALJ posed the hypothetical he ultimately adopted as plaintiff's RFC to the vocational expert, he allowed plaintiff's attorney to question the vocational expert. Plaintiff's attorney asked if the job of food order clerk would expose plaintiff to the public. (R. 79). The

---

[6] Plaintiff performed a "Finger Oscillation Test" which "reflect[s] finger tapping speed and control." (R. 359). This test revealed "moderate to severe impairment on the right side and a mild to moderate impairment on the left side." Id.

[7] The Court will briefly summarize the hearing testimony regarding the other jobs found at step five.

vocational expert realized that it would, and noted that the job of food order clerk would be eliminated by the ALJ's stated RFC. (R. 79-80). Plaintiff's counsel went on to ask if the remaining jobs found by the vocational expert, assembly and inspection/checker, would be eliminated if the hypothetical person had a limitation "to only occasionally push and pull with his hands and [was] restricted as to his hands due to moderate to severe impairment on the dominant extremity, mild to moderate on the non-dominant extremity." (R. 80). Again, the vocational expert stated the jobs he previously found would be eliminated. Id.

### ANALYSIS

On appeal, plaintiff raises four issues: (1) the ALJ failed to include all of plaintiff's severe impairments in his RFC; (2) the ALJ erred in determining that plaintiff did not meet a listing;[8] (3) the ALJ's credibility findings are faulty; and (4) the ALJ's step five findings are not supported by substantial evidence. (Dkt. 10 at 2).

**Residual Functional Capacity**[9]

Plaintiff first argues that the ALJ failed to include all of plaintiff's *severe* impairments in his RFC assessment by excluding any mention of his hand impairment found by Drs. Vaught and Reddy. (Dkt. 10 at 3). Plaintiff also argues that the ALJ failed to include any mental RFC limitation for the moderate impairment in dealing with supervisors and co-workers found by Dr. Vaught. Id. The Commissioner counters that any error at step two is harmless because the ALJ

---

[8] Plaintiff argues that he meets the requirements for Listing 2.07. However, the evidence in the record does not support this claim, and at step three, the Commissioner is correct that the burden of proof remains with plaintiff. See Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (A claimant retains the burden of proving that he or she cannot return to past relevant work through step four of the sequential evaluation process.).

[9] Essentially, plaintiff's first argument closely mirrors his final argument that if all of his documented impairments were included in the RFC, all work is precluded according to the vocational expert's testimony; therefore, the Court will address both RFC arguments together.

found severe impairments at step two and continued with the sequential evaluation process. (Dkt. 11 at 3-5). The Court will address the severity issue first.

Ordinarily, the Commissioner would be correct that an error at step two is harmless because the ALJ proceeded to the next step in the sequential evaluation process. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). However, for the error to be harmless, the ALJ's RFC determination "must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record." Grotendorst v. Astrue, 370 F. App'x 879, 883 (10th Cir. 2010). Here, the ALJ failed to include all of plaintiff's impairments "borne out by the evidentiary record"; specifically, he excluded Dr. Reddy's push/pull limitation on plaintiff's hands, and Dr. Vaught's moderate limitation on plaintiff's ability to interact appropriately with supervisors and co-workers.

Social Security Regulations clearly state that the ALJ must "follow a special technique" to evaluate the severity of mental impairments. 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d). See Well v. Colvin, 727 F.3d 1061, 1064 (10th Cir. 2013). Here, the Appeals Council specifically directed the ALJ to perform the special technique on remand of the first decision, among numerous other directives.[10] See *supra* at 3. Although the ALJ included some mental limitations in plaintiff's RFC, specifically that plaintiff "would need simple and repetitive tasks and no more than incidental contact with the public," as noted above, the ALJ failed to include limitations related to plaintiff's interactions with supervisors and co-workers. In addition, had the

---

[10] See 20 C.F.R. §§ 404.977(b), 416.1477(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and make take any additional action that is not inconsistent with the Appeals Council's remand order.").

9

ALJ performed the "special technique" at step two of the sequential evaluation process, the question of the severity of plaintiff's mental impairment would have been determined.

At step four, the ALJ must determine plaintiff's residual functional capacity, which reflects the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p. The ALJ must consider all of a claimant's medically determinable impairments, whether they are severe or not severe. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The Tenth Circuit has held that "failure to consider all of the impairments is reversible error." Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006). The residual functional capacity findings "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The ALJ must "discuss[ ] the evidence supporting his [RFC] decision, and … also … the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

In summarizing the medical evidence, the ALJ mentions Dr. Reddy's limitation on plaintiff's hands "to push/pull occasionally," and the ALJ gave Dr. Reddy's opinion "substantial weight." (R. 26, 27). However, the ALJ failed to explain why he excluded Dr. Reddy's limitation on plaintiff's hands from the RFC. Id.

Similarly, the ALJ discussed Dr. Vaught's consultative mental examination, but failed to mention Dr. Vaught's physical finding regarding plaintiff's hands. Id. As to plaintiff's mental limitations, the ALJ noted that Dr. Vaught's opinion included "moderate limitations in the ability to interact appropriately with the public, supervisors and co-workers," and the ALJ included a limitation in plaintiff's RFC of "incidental contact with the public. Id. The ALJ also gave Dr.

Vaught's opinion "significant weight," but failed to explain why he did not include any limitation on co-workers and supervisors. Id.

Finally, at the hearing, the vocational expert acknowledged that the job of food order clerk (DOT # 209.567-014) exceeded the hypothetical given by the ALJ due to excessive public contact. (R. 79-80). The ALJ does not explain why he decided to include this job at step five, even though the vocational expert's testimony clarified that it exceeded the RFC limitation of "no more than incidental contact with the public." Id. Further, the vocational expert stated that if a limitation to "only occasionally push and pull with his hands" were added to the hypothetical, the remaining jobs of assembly worker and checker would be eliminated. (R. 80).

For these reasons, this case must be remanded for the ALJ to perform the special technique at step two in order to determine the severity of plaintiff's mental impairments, translate those severe or nonsevere mental impairments into RFC limitations, and if he chooses to reject Dr. Vaught's moderate limitation on contact with co-workers and supervisors in his RFC, to explain his reasoning, and for the ALJ to explain the evidence supporting his RFC determination.

The Court declines to address the remaining issues.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is **REVERSED and REMANDED** for further proceedings. Specifically, the ALJ should perform the "special technique" at step two and properly explain the evidence that supports his RFC findings.

SO ORDERED this 4th day of September, 2015.

T. Lane Wilson
United States Magistrate Judge